# W. E. Peets Motors, Plaintiff, *v.* The State of New York and Others, Defendants.

Supreme Court, Franklin County, April 13, 1933.

*E. W. Scripter*, for the plaintiff.

*George J. Moore* and *William Herron*, for the defendants First National Bank of Brushton and St. Regis Falls National Bank.

*Milbank, Tweed, Hope & Webb* [*John G. Clancy* of counsel], for the defendant Lehigh Portland Cement Company.

*Cravath, Degersdorff, Swaine & Wood* [*Stuart N. Updike* of counsel], for the defendant Kalman Steel Corporation.

*Cantwell & Cantwell* [*Miles Cantwell* of counsel], for the defendant L. Cass Bowen.

*Arthur W. Handly*, for the defendants H. D. Thompson & Company and others.

*Andrew B. Cooney*, for the defendants M. D. Ryan and others.

*Howard R. Sanford*, for the defendant Alexander Hunter.

*Kellas & Kellas* [*LeRoy M. Kellas* of counsel], for the defendants Fred Cornish and others.

*John P. Badger, 2d*, for the defendants Howard Delong and others.

*Leslie M. Saunders*, for the defendants Almon Smith and others.

*Walter G. Mullarney*, for the defendants Ausable Credit Corporation and others.

*John J. Bennett, Attorney-General [Thomas Burke, Deputy Attorney-General*, of counsel], for the State of New York.

LAWRENCE, J. This is an action to foreclose a lien upon a public improvement. On June 15, 1931, defendants Morris Jacks and J. B. Cryer, doing business under the firm name of Sola Construction Company, entered into a contract with the State of New York for the construction of a State highway, known as Dickenson-West Bangor, Part One, Highway, according to plans, specifications, proposals and estimates. The contract was to be completed on or before December 1, 1931. The contract price was $107,118.15.

Sola Construction Company entered upon the performance of such contract and continued work upon it until the fall of 1931, when work was suspended by the contractor and the contract was abandoned, at which time, according to later estimates made by the State Highway Department, the Sola Construction Company had earned on said contract the sum of $41,314.20, computed by the State Highway Department upon the bid prices prescribed by the contract and proposals.

On April 29, 1932, notice was given by the State to the construction company, requiring the construction company to proceed with the contract. On June 2, 1932, the contract was formally canceled by the State.

After the contract was abandoned by the construction company the State expended $885.70, as their representative states, to protect the work done and keep the road in a passable condition for traffic, and the State claims this amount as a deduction from the amount available for the payment of liens. To this item the various lienors object. It may be that the State was obligated to protect the work and, if this had been neglected, the new contract for completion might have been for a larger amount, but that would not justify the State in making a deduction from the amount earned at the time of abandonment. In this connection I am furnished with a certificate from the Division of Highways of the State Department of Public Works, under date of January 13, 1933, which states that the final account covering the work performed by the Sola Construction Company shows the sum of $22,404.60 in the hands of the State over and above payments made, although the final certificate now submitted shows a deduction from this amount of $885.70.

Proposals for a completion contract were made in June, 1932,

by Richard E. Weber, Inc., in the amount of $61,280.91, and on July 7, 1932, the completion contract was entered into between the State and the Weber Company pursuant to proposals. The completion contract was accepted by the State in January, 1933. The amount paid to the Weber Company, according to final estimates, was $59,079.20. The difference of $2,201.71 was deducted in accordance with final estimates. That would seem to be proper under the proposals and contract.

Some of the lienors take the position that as the amount of the original contract was $107,118.15, such sum is the fund available for the payment of liens after deducting the amount paid to complete the contract, viz., $59,079.20, and the amount paid to lienors, viz., $18,909.60, which would leave a balance of $29,129.35. With this contention I cannot agree. Work was abandoned by the contractor and the most he could expect would be what he had earned up to that time. Liens would attach only to the extent of the money due the contractor, which will be taken here as the sum of $41,314.20 less $18,909.60, or $22,404.60. The question is then presented as to whether the sum of $885.70, spent by the State in protecting the work done and maintaining passable traffic conditions, should be deducted in order to arrive at the sum available for the payment of liens.

The State certifies that by its final estimates the construction company had performed work to the extent of $41,314.20. The question is suggested as to whether the State had any legal obligation or duty to make any expenditure after abandonment by the construction company. Whether the State was legally obligated to make expenditure it assumed a duty to do so and protect its citizens. Such a question as is here presented should not be determined upon narrow principles of justice. The contract was completed within the limit of the contract price. While sections 132 and 132-a of the Highway Law do not apply here specifically, they strongly suggest that maintenance of the work already done should be charged against the money available for complete construction instead of charging it against the amount earned by the contractor to which the liens would attach. I, therefore, hold that the State should not attempt to deduct the expenditures referred to from the amount earned by the contractor and I find that the amount in the hands of the State available for the payment of liens in this case is $41,314.20, less the amounts properly paid prior to filing of claims. Such prior payments amount to $18,909.60 and such payments do not seem to be questioned. This would leave, as already stated, the sum of $22,404.60.

We now approach the question of priority. Objection is made

that the assignment to the First National Bank of Brushton, N. Y., of all moneys due under the contract, dated August 3, 1931, is invalid because of the alleged failure to have copies filed within twenty days in the proper departments. The records before me show that this assignment was filed in the State Department of Highways August 5, 1931, and in the Comptroller's office on August 6, 1931.

Claim is also made that the assignment to the First National Bank of Brushton is invalid because there was no consent by the Highway Department to the assignment as provided by section 86 of the General Municipal Law and section 43 of the State Finance Law. It is apparent upon examination of those sections that the consent referred to there is a consent to an assignment of the contract itself and not to an assignment of moneys due thereunder.

The next inquiry to be answered is to what extent the First National Bank of Brushton is protected in its advances of money. It advanced $3,000 on September 1, 1931. As to this amount there would seem to be no question of its right to priority over all other liens. It made further advances of $1,500 prior to the filing of any liens, but before it had made the advances of this $1,500 assignments had been filed. These assignments applied to particular items in the contract and were made with the consent of the bank, and those particular items were released by the bank. Two of these assignments were to the Lehigh Portland Cement Company, filed September 8, 1931; and one was to the Kalman Steel Company, filed September 11, 1931. It is alleged that as these assignments applied only to certain items in the contract and did not place any greater incumbrance on the fund than existed before they were filed, they do not constitute such assignments as are contemplated by section 25 of the Lien Law, and that the legal effect of what was done was only to divert to the assignees a part of the moneys assigned to the bank. This argument would seem to be at war with the language of subdivision 1 of section 25 as in force at the time of this contract. That language refers to assignments as well as liens and provides that when any lien or assignment next subsequent shall be filed, priority ceases. I, therefore, find that the First National Bank of Brushton had a first lien on the funds after deduction of costs to be awarded, such first lien to be limited to $3,000 and interest from September 1, 1931, the balance of the claim of the First National Bank of Brushton for $1,500 and interest from the date of notes to share *pro rata* with material liens.

Inquiry is now directed to the claim of the St. Regis Falls National Bank. This bank advanced to the Sola Construction Company

the sum of $2,500 on October 1, 1931, and a further sum of $700 on October 8, 1931. It claims priority by virtue of a so-called assignment to it by the First National Bank of Brushton. Two thousand, five hundred dollars of this sum was advanced before the paper was executed and $700 on the day the first lien was filed, and the paper referred to as an assignment was not filed until October 13, 1931. It was dated October 7, 1931, and acknowledged on the seventh of October and the ninth of October. This assignment was not made by the contractor. It was apparently treated as a release rather than as an assignment. Under the circumstances, I hold that the St. Regis Falls National Bank obtained no lien on the funds in the hands of the State. It appears, however, that one of the members of the firm of the Sola Construction Company was personally served with the answer of the St. Regis Falls National Bank. Judgment may, therefore, be entered against the Sola Construction Company and against Morris Jacks personally for $3,200, with interest on $2,500 from October 1, 1931, and interest on $700 from October 8, 1931.

The assignees Lehigh Portland Cement Company and the Kalman Steel Company further urge that the First National Bank of Brushton might have agreed to retain payments for the items released to the assignees, and if such had been done, the instant problem would come within the ruling of *Carroll Sand Co.* v. *Jones, Inc.* (256 N. Y. 99). In this connection it may be added that the bank might also, by an arrangement with the construction company, have held funds for the benefit of any other claimants who had furnished material and had not even filed a lien. Such an arrangement would seem contrary to the evident intent of the statute. If the Lehigh Portland Cement Company had filed a lien, no question would arise about the destruction of priority. If they had filed an assignment simply, priority would cease. Their taking an assignment would avail nothing unless with the consent of the Brushton bank, as all moneys had already been assigned. In any way we approach the problem we are confronted with the plain letter of the statute that the filing of an assignment terminated priority. I cannot see that the consent of the bank would in any way modify the effect which the filing of the assignment would create under the statute and, therefore, hold that priority ceased when the first lien or assignment was filed.

A further statement should be made regarding the assignments to the Lehigh Portland Cement Company and the Kalman Steel Company. It is urged on their behalf that these assignees, for furnishing material, are entitled to the same rights as an assignee advancing money, and that these assignments are not such as are

contemplated by subdivision 1 of section 25 which acts to affect priority, but are really a part of the first assignment. The assignees stress the change of the wording of the statute which went into effect October 1, 1930, and the wording of the statute as amended by chapter 627 of the Laws of 1932, as well as the wording prior to the amendment effective October 1, 1930. It is claimed that in the Laws of 1930 the Legislature had in mind that advances should not be confined to advances of money but should include advances for material furnished. This case is governed, however, by the law as it stood after October 1, 1930. Under that statute priority is only given to any person advancing money, and even that is destroyed by the filing of the next lien or assignment so that, irrespective of what the assignment was to secure advances for, it would seem to have destroyed any priority by the act of filing it.

A statement should be made with reference to the claim of Bert M. Ryan. It is conceded by the attorneys that this lien is a proper material lien for the sum of $3,773.95. It has been taken over by Archie E. Morrison of Malone, N. Y., as receiver of Bert M. Ryan. An assignment has also been made to the Ausable Credit Corporation by Ryan and a further assignment to King Kellogg by Ryan subject to the claim of the Ausable Credit Corporation. Under the circumstances it should be paid over to the receiver and the equities of the subsequent assignees adjusted through the receiver.

A further statement should be made regarding the claim of M. D. Ryan. This claimant worked for the Sola Construction Company. He performed daily labor and should have a preferred labor lien to the extent of $300. He also did work in trucking material to the extent of $1,077 and should have a material lien for such sum. He also crushed stone at $2.25 per yard and should have a material lien for that in the sum of $745.87. He rented a steam roller to the construction company for $75 and an air compressor for $330. He furnished a steam shovel at the agreed rate of $5 per hour and provided an operator and fireman. This amounted to $2,935.25. The labor furnished, according to the testimony, for the operator and fireman amounted to $678.50 and is allowed as a material lien. The balance of $2,256.75 would not seem to be lienable.

A further statement should be made regarding the lien of Howard Delong. His claim is for $228.38. This was for lumber and other material. Some of it was used in the actual construction. For this he should have a lien for material. This lien amounts to $114.88.

A further statement should be made with reference to the claim of William H. Murphy. This claim is filed as a lien for the price of coal used in a boiler and it is insisted that as the ashes entered

into and became a part of the roadbed, the claim is lienable.   In view of the decision in *Schultz* v. *Quereau Co.* (210 N. Y. 257) and the reasons there given, it seems clear that this claim is not lienable.

It would also seem that the Albert Pipe Supply Company, Inc., has no lien, their claim being for pipe which did not enter into the construction of the road.

A further statement should be made with reference to the claim of the plaintiff.   It was stipulated that the claim of the plaintiff to the extent of $2,428.27, was for trucking and hauling material and that the plaintiff should have a material lien for that sum.   It also appears that a summons and complaint were personally served upon Morris Jacks, one of the members of the Sola Construction Company.   It further appears that the Sola Construction Company is indebted to the plaintiff in the sum of $3,520.15.   Judgment may, therefore, be entered in favor of the plaintiff against the Sola Construction Company and Morris Jacks personally for the sum of $3,520.15, with interest from date of filing, less amount to be paid by the State.   In connection with this claim I think it should be stated that the plaintiff would be entitled to an extra allowance.

Costs will be allowed to all attorneys who appeared, the amount of the costs to be adjusted at a hearing for that purpose.

A large number of claims have been adjusted by stipulation. It has also been stipulated that interest should be charged from the date of filing.

A list of the claims established either by stipulation or by the court with the amount, date of filing, and number of the claim were given at the hearing.   (List of claims omitted.)

The attorney for the plaintiff will prepare findings and notify the attorneys of a time when they will be presented for settlement. At that time the question of costs will be determined.